UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PATTON, | No. 2:25-cv-00810 SCR P |
| Plaintiff, | |
| v. | ORDER |
| THOMPSON, et al., | |
| Defendants. | |

Plaintiff is incarcerated in state prison and proceeding pro se with this civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint is before the undersigned for screening. (ECF No. 1.) For the reasons set forth below, the undersigned finds that the complaint states an Eighth Amendment medical indifference claim against defendant Thompson in his individual capacity and disability discrimination claims against defendant Thompson in his official capacity, but no other cognizable claims. Defendants Oldham, Sharp, Money, and Bowman are misjoined, and the complaint's claims against them may not proceed. See Fed. R. Civ. P. 21. Plaintiff will be given the option of proceeding on the complaint as screened or filing an amended complaint.

**IN FORMA PAUPERIS**

Plaintiff has requested leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915. (ECF No. 2.) He has submitted a declaration showing that he cannot afford to pay the entire filing fee. See 28 U.S.C. § 1915(a)(2). Accordingly, plaintiff's motion to

1

proceed in forma pauperis is granted. This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum. 28 U.S.C. §§ 1914(a). As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account. See 28 U.S.C. § 1915(b)(1). A separate order directed to CDCR requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account. These payments will be taken until the $350 filing fee is paid in full. See 28 U.S.C. § 1915(b)(2).

## STATUTORY SCREENING OF PRISONER COMPLAINTS

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

2

favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**PLAINTIFF'S COMPLAINT**

Plaintiff is incarcerated at the California Medical Facility ("CMF"). (ECF No. 1 at 1.) He identifies as a double amputee and Navy Veteran. (Id. at 5.) His complaint names five defendants: (1) Sargeant Thompson; (2) Correctional Officer ("C/O") Oldham; (3) C/O Sharp; (4) Law Librarian Mrs. Money; and (5) Principal Mrs. Bowman. (Id. 1-2.) All defendants are sued in their individual and official capacities. (Id. at 2.) Plaintiff seeks, inter alia, $25,000 in compensatory damages, $50,000 in punitive damages, and costs. (Id. at 16.)

The complaint's factual section is typed (ECF No. 1 at 5-11) but its cause of action pages are handwritten and largely illegible (id. at 12-15). The following overview of the complaint's facts and causes of action is based on the undersigned's best reading of plaintiff's handwriting. See Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) (courts must liberally construe the filings of pro se prisoner litigants and may not "hold . . . muddled draftsmanship against them")

### I. Allegations Relating to Leg Prosthesis (Defendant Thompson)

Plaintiff alleges that on April 24, 2022, he was put into the "Hole" as a punishment for something he didn't do. (ECF No. 1 at 10.) During that process, his leg prosthetics were "lost." (Id.) Plaintiff was then sent to Y-Unit in May 2022 and finally returned to the R-1 Dorm in October 2023. When he returned, defendant Thompson and other officers gave plaintiff the "run around" about his prosthetics. (Id. at 11.) Plaintiff was interviewed multiple times. Rather than replacing the prosthetics, the officers antagonized plaintiff for more than a year with a barrage of questions. (Id.) Plaintiff spoke to defendant Thompson and other staff "over and over" for ten months, which delayed plaintiff's receipt of physical therapy and other services. (Id. at 15.)

### II. Law Library Clerk Allegations (Defendants Money and Bowman)

On July 22, 2024, plaintiff entered the CMF Main Law Library and asked defendant Money, a Librarian, why he wasn't hired for the Library Clerk Position. (ECF No. 1 at 5.) Plaintiff alleges Money said she chose not to hire him because he was too "pushy" and "overly aggressive" during the interview. (Id.) Plaintiff states that defendant Bowman was the main person who conducted the interview and Money asked maybe two questions at most. (Id.)

3

Plaintiff tried to speak to Money about the interview, but she ignored his questions. (Id.)

Plaintiff alleges that when defendant Money walked away, she said, "And, no . . . this is not racist!" Plaintiff claims this is a reference to his grievance against Defendant Bowman and another library employee, nondefendant Sanchez. (ECF No. 1 at 6.) Plaintiff had claimed that defendant Bowman gave preferential treatment to one race over another and Sanchez was denying inmates access to the law library in a timely manner. (Id.) Plaintiff then filed an additional grievance against Ms. Money for treating him in a vengeful manner. (Id.)

### III.     Mail Interference Allegations (Defendants Oldham and Sharp)

Plaintiff alleges that on September 18, 2024, he received a CDCR Form 1819 (notification of disapproval for mail/packages/publications) from defendant Oldham. (ECF No. 1 at 7.) The form indicated that a package was denied because plaintiff had already received one for the third quarter. Plaintiff wrote to Oldham the same day explaining that the package ordered was for the fourth quarter, which would begin in October. Defendant Oldham then returned plaintiff's package to the vendor on September 30, 2024, indicating it was "rejected" for being held more than two weeks even though less than two weeks passed since plaintiff received the 1819. (Id.)

On October 24, 2024, defendant Oldham was assigned to plaintiff's housing unit (R-1). (ECF No. 1 at 8.) Plaintiff asked her why his package was returned. (ECF No. 1 at 8.) Defendant Oldham began to talk over plaintiff. Plaintiff asked if her negative attitude was the result of plaintiff filing a grievance against her husband, defendant Sharp. (Id.) Defendant Oldham "blew up" at plaintiff but did not answer his question. On October 25, 2024, the day after the incident with Oldham, defendant Sharp stopped plaintiff and pulled him to the side of the hallway so aggressive that plaintiff though he was going to beat him up. (ECF No. 1 at 10.)

### LEGAL STANDARDS

#### I.    42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

(2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

## II.    Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted).

## III.   Joinder

A plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). A plaintiff may also join "as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). However, unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). In other words, joining more than one claim against the same defendant is permissible, but joining multiple defendants in one complaint is only proper when the claims against them are based on the same facts. This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." Id.

## IV.    Eighth Amendment Deliberate Indifference to Serious Medical Needs

Denial or delay of medical care for serious medical needs may violate an incarcerated

5

person's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  A defendant is liable for such a violation only when the defendant is deliberately indifferent to the serious medical needs.  Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id. (citing Estelle, 429 U.S. at 104).  "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F. 3d at 1131-32 (citing McGuckin, 974 F.2d at 1059-60).

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Id.  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  (Id. at 839.)  A showing of merely negligent medical care is not enough to establish a constitutional violation.  Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health."  Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted).

A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Moreover, as for any § 1983 claim, there must be an actual causal link between the actions of the named defendants and the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Services, 436 U.S. 658, 691-92 (1978); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

## V.  Disability Discrimination

Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. §§ 12131 et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 et seq., apply to incarcerated persons within state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir.1997).  To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

> (1) [H]e is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007).  As to the third element, public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  Pierce v. Cnty. of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (citing 28 C.F.R. § 35.130(b)(7) and McGary v. City of Portland, 386 F.3d 1259, 1265-67 (9th Cir. 2004)).

While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same analysis to claims brought under both statutes."  Zukle v. Regents of the Univ. of Cal., 166 F.3d

1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).  In addition, "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

### VI.    California Government Claims Act, Cal. Gov. Code §§ 810 et seq.

The Government Claims Act, Cal. Gov't Code §§ 810 et seq. ("GCA"), "requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part." Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." Cardenas v. Cnty. of Tehama, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020) (quoting State of California v. Superior Court, 32 Cal. 4th 1234, 1243 (2004)).  "The timely presentation of a claim under the [GCA] is not merely a procedural requirement but is an actual 'element of the plaintiff's cause of action.'" Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (quoting Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209 (2007)).

## DISCUSSION

### I.    Claims Against Defendant Thompson

The undersigned construes the complaint as alleging the following claims against Defendant Thompson: (1) Eighth Amendment deliberate indifference to serious medical needs; (2) disability discrimination under Title II and the RA; (3) violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; and (4) intentional infliction of emotional distress. (ECF No. 1 at 15.)

Plaintiff has minimally stated a cognizable Eighth Amendment medical indifference claim against defendant Thompson in his individual capacity only.[1]  Plaintiff's double-amputee status constitutes a serious medical condition. See Gillen v. D'Amico, 237 F. App'x 173, 174 (9th Cir.

---

[1] Plaintiff's official capacity claims for damages are barred by the Eleventh Amendment. See Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.")

8

2007) ("We assume that the condition of [plaintiff's] amputated leg constitutes a serious medical condition.") Further, the allegations are minimally sufficient to establish Thompson's deliberate indifference. While the complaint does not identify the prison officials who interviewed plaintiff during the ten-month period in which he received "the run around," it does sufficiently identify defendant Thompson as an official whom plaintiff spoke to about the problem. (See ECF No. 1 at 15.) Accordingly, because the complaint supports the reasonable inference that defendant Thompson contributed to the delay, Plaintiff's Eighth Amendment claim may proceed. See Jett, 439 F.3d at 1096 ("Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment[.]") (quotations and citations omitted).

Plaintiff has also stated a cognizable Title II and RA claim for damages against Defendant Thompson in his official capacity only. While individual capacity claims are not cognizable under Title II or the RA, see Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), state officials sued in their official capacities represent the State for purposes of both laws. Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187–88 (9th Cir. 2003). Plaintiff, a double amputee, is a qualified individual with a disability under both Acts. Further, at this early stage of the proceeding, the undersigned finds that the provision of plaintiff's leg prosthetics is a potential reasonable modification necessary to avoid discrimination on the basis of disability. See Bell v. Williams, 108 F.4th 809, 827 (9th Cir. 2024) (medical prescription for wheelchair and prosthetic leg were "obviously reasonable accommodations for transportation within the jail"). Again, the complaint also contains minimally sufficient facts to show Defendant Thompson's deliberate indifference.

Finally, Plaintiff's state law claims fail for failure to plead GCA compliance. With respect to defendant Thompson, the complaint alleges only that "Plaintiff has complied with Government Claim 910." (ECF No. 1 at 15.) This is presumably a reference to Cal. Gov't Code § 910, which describes the required components of a tort claim. However, conclusory assurances of GCA compliance are insufficient to survive screening.[2] "[A] bare allegation that the [GCA]

---

[2] Nor would plaintiff's compliance with § 910, accepted as true, establish his tort claim met other GCA requirements such as timeliness. See Cal. Gov't Code § 911.2 (Claims relating to injury to person must be presented "not later than six months after the accrual of the cause of action.").

has been followed would seem to be a mere conclusion that is insufficient under Iqbal and Twombly[.]" Young v. City of Visalia, 687 F.Supp.2d 1141, 1152 (E.D. Cal. 2009); see also Cardenas, 476 F. Supp. 3d at 1070 (allegation that "Plaintiffs filed timely administrative 'tort' claims" was "mere legal conclusion" warranting dismissal of state law claims); Creighton, 628 F. Supp. 2d at 1225 (dismissing state law claim where plaintiff "alleges no facts supporting his conclusory assertion that the [GCA] jurisdictional requirement has been met"). Plaintiff will be given leave to amend his complaint to add sufficient factual allegations of GCA compliance.

## II.     The Remaining Defendants Are Misjoined

The allegations against defendants Money and Bowman regarding the law library clerk position, as well as the mail-related claims against defendants Oldham and Sharp, are unrelated to defendant Thompson's alleged interference with plaintiff's leg prosthesis. Because there is no question of law or fact common to the defendants across the three incidents, the defendants are not properly joined under Rule 20(a).

"Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Courts generally remedy misjoinder by severing or dismissing without prejudice all but the first named defendant. Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); see also Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv., No. 1:09-CV-480 OWW GSA, 2009 WL 3857417, at *8 (E.D. Cal. Nov. 17, 2009) (dismissal of all defendants except the first one named in the caption "is an accepted practice under Rule 21" (citing DirecTV v. Armellino, 216 F.R.D. 240, 241 (E.D.N.Y. 2003))). Here, the first named defendant is Sargeant Thompson (see ECF No. 1 at 1). Accordingly, at the end of this order, plaintiff will be given options on how to proceed regarding his claims against defendant Thompson.

The undersigned must next determine whether the severance or dismissal of defendants Oldham, Sharp, Money, and Bowman is appropriate. In deciding whether to sever or dismiss defendants, courts must conduct a prejudice analysis to consider, inter alia, the "loss of otherwise timely claims if new suits are blocked by statutes of limitations." Rush v. Sport Chalet, 779 F.3d 973, 975 (9th Cir. 2015) (quoting DirectTV, Inc. v. Leto, 467 F.3d 842, 846–47 (3rd Cir. 2006)). This Court has interpreted the Ninth Circuit's mandate in Rush to mean that "this Court should

avoid dismissal of otherwise potentially meritorious claims outside of the limitations period." Griffin v. Gonzales, No. 1:11-CV-0210 AWI, 2015 WL 1820899, at *2 (E.D. Cal. Apr. 15, 2015) (citing Rush, 779 F.3d at 975).

For § 1983 actions, this Court applies California's "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); see also Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002). "California's statute of limitations for personal injury claims is two years." Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Civ. Proc. Code § 335.1.

The limitations period is statutorily tolled for a person who is, "at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life," and "the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Cal. Civ. Proc. Code § 352.1(a); see Johnson v. State of Cal., 207 F.3d 650, 654 (9th Cir. 2000). Thus, a prisoner serving a term less than life in California may have four years to file a federal § 1983 claim. See Cato v. Darst, No. 2:17-cv-1873 TLN EFB P, 2019 WL 2249636, at *2 (E.D. Cal. May 23, 2019).

Plaintiff's complaint does not specify the length of his sentence. A search of the CDCR Inmate Locator website, https://ciris.mt.cdcr.ca.gov/search, indicates that Plaintiff has a parole eligibility date of March 2038. Therefore, the unsigned draws the reasonable inference that Plaintiff is incarcerated for a term of less than life and qualifies for tolling under § 352.1(a). Because plaintiff's allegations regarding both the law library clerk position and interference with his mail are based on relatively recent incidents (July 2024 and September 2024, respectively), he will not be prejudiced by their dismissal from this action. Accordingly, defendants Oldham, Sharp, Money, and Bowman need not be severed from the action at this time and plaintiff may pursue claims against them in separate, timely filed actions.

### III.    Options From Which to Choose

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff has adequately stated an Eighth Amendment medical indifference claim against

11

defendant in his individual capacity, and disability discrimination claims under Title II and the RA against defendant Thompson in his official capacity. However, Plaintiff may not proceed on his state law claims against Thompson because he has not adequately alleged compliance with the GCA claim presentation rules. In addition, defendants Oldham, Sharp, Money, and Bowman have been improperly joined in this lawsuit and the claims against them may not proceed.

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within thirty (30) days from the date of this order.

**Option No. 1:** The first option available to plaintiff is to proceed immediately against defendant Thompson on the Eighth Amendment, Title II, and RA claims. By choosing this option, plaintiff will be agreeing to voluntarily dismiss the state law claims against defendant Thompson and dismiss defendants Oldham, Sharp, Money, and Bowman. If plaintiff chooses this option, the court will proceed to immediately serve the complaint and order a response from defendant Thompson. Plaintiff may pursue claims against Oldham, Sharp, Money and Bowman in separate, timely filed actions.

**Option No. 2:** The second option available to plaintiff is to file an amended complaint to fix the problems described above against defendant Thompson. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

If plaintiff chooses to amend the complaint, he is advised that he may only join multiple claims if they are all against a single defendant, Fed. R. Civ. P. 18(a), and he may only join defendants where the right to relief arises out of the same "transaction, occurrence, or series of transactions," and "any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2). In other words, joining more than one claim against the same defendant is permissible, but joining multiple defendants in one complaint is only proper when the claims against them are based on the same facts.

In an amended complaint, plaintiff must also demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362,

370-71 (1976). Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court will not refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

### IV. Plain Language Summary of Order for Party Proceeding Without a Lawyer

The court has reviewed your complaint and determined that the Eighth Amendment, Americans with Disabilities Act, and Rehabilitation Act claims against defendant Thompson may go forward. The state law claims against Thompson cannot go forward because the complaint does not explain how plaintiff complied with the tort claim rules. Defendants Oldham, Sharp, Money, and Bowman are improperly joined to the lawsuit because their actions are unrelated to the alleged denial of plaintiff's leg prosthesis. Plaintiff may refile the claims against these defendants in a separate civil action if plaintiff so chooses.

## MOTION TO APPOINT COUNSEL

### I. Plaintiff's Motion

Plaintiff also moves for the appointment of counsel under 28 U.S.C. § 1915(e)(1). (ECF No. 4.) Plaintiff argues that an order appointing counsel is warranted for four reasons: (1) he is unable to afford counsel; (2) his imprisonment will "greatly limit his ability to litigate"; (3) his claims have merit on their face; and (4) counsel will better enable plaintiff to present evidence and cross examine witnesses. (Id. at 1.)

////

## II. Legal Standard

District courts lack authority under 28 U.S.C. § 1915 to require counsel to represent indigent prisoners in section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request that an attorney voluntarily represent such a plaintiff. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. Wood, 900 F.2d at 1335; Riley v. Franke, 340 F. Supp. 3d 783, 787 (E.D. Wis. 2018).

Beyond § 1915(e)(1), other sources of law may implicate a request for counsel. For example, appointed counsel may be required in a civil proceeding as an accommodation for a litigant who is disabled. See Franco-Gonzalez v. Holder, No. 10-cv-02211 DMG (DTBx), 2013 WL 3674492, at *3-*9 (C.D. Cal. Apr. 23, 2013) (granting summary judgment to class of mentally disabled individuals in civil immigration proceedings on their request for appointed representatives under the Rehabilitation Act). Due process may also require appointment of counsel in certain proceedings. See Turner v. Rogers, 564 U.S. 431, 444-45 (2011) (analyzing request for appointment of counsel in civil proceeding under the Mathews v. Eldridge, 424 U.S. 319 (1976), procedural due process framework).

## III. Analysis

Plaintiff has not identified any justification for the appointment of voluntary counsel. The fact of plaintiff's incarceration is not an exceptional circumstance warranting the appointment of counsel. See Suarez v. Clark, No. 1:22-cv-0160 JLT SAB (PC), 2024 WL 477982, at *1 (E.D. Cal. Jan. 25, 2024) ("[T]he Court has 'repeatedly' held incarceration's challenges on litigation do not constitute an exceptional circumstance . . . . If Plaintiff's incarceration was an exceptional

14

1  circumstance, any prisoner would be entitled to counsel"). Nor do plaintiff's indigence or lack of
2  trial advocacy skills and experience constitute exceptional circumstances. See Callender v.
3  Ramm, No. 2:16-cv-0694 JAM AC P, 2018 WL 6448536, at *3 (E.D. Cal. Dec. 10, 2018) ("The
4  law is clear: neither plaintiff's indigence, nor his lack of education, nor his lack of legal expertise
5  warrant the appointment of counsel"); Kirkland v. Smith, No. 1:23-CV-0602 JLT CDB, 2025 WL
6  1859380, at *2 (E.D. Cal. June 23, 2025) ("The fact an attorney would be better prepared to
7  litigate and try this action, does not amount to an exceptional circumstance warranting the
8  appointment of counsel").
9        Finally, while the undersigned did determine on screening that plaintiff's complaint stated
10 cognizable Eighth Amendment medical indifference, Title II, and RA claims regarding the
11 alleged denial of plaintiff's leg prosthesis, neither these claims nor their factual bases are so
12 complex as to warrant the appointment of counsel. See Terrell, 935 F.2d at 1017 (affirming
13 denial of request for appointment of counsel and reasoning Eighth Amendment medical
14 indifference claim not sufficiently complex to warrant appointment of counsel); Goldstein v.
15 Flament, 167 F. App'x 678, 680-81 (9th Cir. 2006) (upholding denial of appointment of counsel
16 for pro se prisoner where Eighth Amendment deliberate indifference to medical needs claim did
17 not demonstrate exceptional circumstances). For instance, while plaintiff's claims are at least
18 partly medical in nature, at this point in the case they do not appear to be the kind that would
19 require extensive discovery or expert medical testimony.
20       Accordingly, plaintiff's motion for the appointment of counsel is denied. The denial is
21 without prejudice, meaning that plaintiff can refile the motion at a later point in the action should
22 exceptional or other circumstances warranting the appointment of counsel present themselves.

## CONCLUSION

24       In accordance with the above, IT IS HEREBY ORDERED that:
25       1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.
26       2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff
27 is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.
28 § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the

1 appropriate agency filed concurrently herewith.

2      3. Plaintiff's motion to appoint counsel (ECF No. 4) is DENIED without prejudice.

3      4. Plaintiff's state law claims against defendant Thompson do not state claims for which relief can be granted. In addition, defendants Oldham, Sharp, Money, and Bowman are improperly joined to the present suit.

6      5. Plaintiff has the option to proceed immediately on his cognizable Eighth Amendment medical indifference claim (individual capacity) and disability discrimination claims under Title II and the RA (official capacity) against defendant Thompson, or to file an amended complaint.

9      6. Within thirty (30) days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

12      7. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of defendants Oldham, Sharp, Money, and Bowman, as well as plaintiff's state law claims against defendant Thompson.

DATED: October 6, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PATTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMPSON, et al.,<br><br>　　　　Defendants. | No.  2:25-cv-00810 SCR P<br><br>NOTICE OF ELECTION |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his Eighth Amendment medical indifference claim against defendant Thompson (individual capacity) and his Title II and RA claims against defendant Thompson (official capacity) without amending the complaint.  Plaintiff understands that by choosing this option, the remaining defendants (Oldham, Sharp, Money, and Bowman) and claims will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.

DATED:_____

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Michael Patton, Plaintiff Pro Se

1